1
2
3
4
5

**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (SBN 159936)
mgr@reichradcliffe.com
Adam T. Hoover (SBN 243226)
adhoover@reichradcliffe.com
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Phone: (949) 975-0512
Fax: (949) 208-2839

6
7
8
9

**LIFSHITZ & MILLER LLP**
Joshua M. Lifshitz (*Pro Hac Vice to be submitted*)
jml@jlclasslaw.com
821 Franklin Ave., Suite 209
Garden City, NY 11530
Phone: (516) 493-9780
Fax: (516) 280-7376

10

Attorneys for Plaintiff

11

12

### UNITED STATES DISTRICT COURT

13

### SOUTHERN DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21
22

ERIK MIDGARDEN, Individually and on
Behalf of All Others Similarly Situated,

          Plaintiff,

     v.

AMPLIPHI BIOSCIENCES CORP., PAUL
GRINT, JEREMY C. COOK, LOUIS
DRAPEAU, WENDY JOHNSON, MICHAEL
PERRY, and VIJAY SAMANT,

          Defendants.

Case No:  **'19 CV0684 WQH BLM**

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

23
24
25
26
27
28

Plaintiff Erik Midgarden ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by AmpliPhi Biosciences Corp. ("AmpliPhi Biosciences" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning AmpliPhi Biosciences and the Defendants.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public shareholders of AmpliPhi Biosciences against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with C3J Therapeutics, Inc. ("C3J") (the "Proposed Transaction").

2.     On January 4, 2019, AmpliPhi Biosciences entered into an Agreement and Plan of Merger (the "Merger Agreement") with C3J, pursuant to which a wholly owned subsidiary of AmpliPhi Biosciences, Ceres Merger Sub, Inc. ("Merger Sub"), will merge with C3J in an all-stock transaction after which C3J stockholders will own 76% of the combined company and AmpliPhi Biosciences stockholders will own 24% (the "Merger"). The transaction will account for a $10 million investment by certain C3J investors.

3.     On April 04, 2019, in order to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against AmpliPhi Biosciences and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to AmpliPhi Biosciences stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Further, the Company's principal executive offices are located in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of AmpliPhi Biosciences common stock.

9.      Defendant AmpliPhi Biosciences is a California corporation with its principal executive offices located at 3579 Valley Centre Drive, San Diego, CA 92130.  The Company's common stock is traded on the NYSE under the symbol "APHB."

10.      Defendant Paul Grint ("Grint") is and has been the Company's Chief Executive Officer and a member of the Board at all times during the relevant time period.

11. Defendant Jeremy C. Cook ("Cook") is and has been Chairman of the Board of the Company at all times during the relevant time period.

12. Defendant Louis Drapeau ("Drapeau") is and has been a director of the Company at all times during the relevant time period.

13. Defendant Wendy Johnson ("Johnson") is and has been a director of the Company at all times during the relevant time period.

14. Defendant Michael Perry ("Perry") is and has been a director of the Company at all times during the relevant time period.

15. Defendant Vijay Samant ("Samant") is and has been a director of the Company at all times during the relevant time period.

16. Defendants Grint, Cook, Drapeau, Johnson, Perry, and Samant are collectively referred to herein as the "Individual Defendants."

17. The Individual Defendants, along with Defendant Ampliphi BioSciences, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public shareholders of AmpliPhi Biosciences (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

19. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of March 21, 2019, there were 32,774,690 AmpliPhi Biosciences common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the

Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

       c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

       d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

       e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

       f.    A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

20.   Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.   AmpliPhi BioSciences is a clinical-stage biotechnology company that works to develop bacteriophage-based therapies for the treatment of antibiotic-resistant bacterial infections. The Company is engaged in identifying and developing naturally occurring bacteriophages in order to develop second-generation bacteriophage products. The Company develops these phage products with the intention of targeting a specific disease-causing bacterial-pathogen.

22.   AmpliPhi Bioscience's product candidates are administered to humans intravenously, inhaled by nebulizer, topically, and intrasinally. The Company provides physician-requested expanded access to its investigational medicines in the U.S. and other

countries where AmpliPhi intends to apply for marketing authorization of the requested product.

## The Company Announces the Proposed Transaction

23. On January 4, 2019, the Company issued a press release announcing the Proposed Transaction. The press release stated in part:

> **AmpliPhi Biosciences Corporation** ("AmpliPhi") **(NYSE American: APHB),** a clinical-stage biotechnology company focused on the development of precisely targeted bacteriophage therapeutics for antibiotic-resistant infections, and **C3J Therapeutics, Inc.** ("C3J"), a private clinical stage biotechnology company focused on the development of novel targeted antimicrobials, today announced that the companies have entered into a definitive agreement under which a wholly owned subsidiary of AmpliPhi will merge with C3J in an all-stock transaction, subject to shareholder approval. The consummation of the merger transaction will result in a combined company that has a diverse clinical-stage pipeline, including a Phase 1/2-ready natural phage candidate targeting bacteremia, as well as a synthetic phage candidate targeting respiratory infections poised to enter Phase 1 development later this year. In addition, the combined company will have an extensive natural phage library and the capability to develop synthetic phage against a wide range of microbial agents.
>
> Certain existing C3J shareholders have committed to invest $10 million in the combined company, subject to customary conditions. The financing will help fund the further development of the combined company's preclinical and clinical programs and is expected to close immediately following with the completion of the merger. The combined company's total cash balance following the closing of the merger and contemplated financing is expected to be approximately $18 million.
>
> "We are delighted with the prospect of consummating this merger with AmpliPhi," said Todd R. Patrick, President and Chief Executive Officer of C3J. "We believe the depth of knowledge that AmpliPhi has developed through human dosing of natural phage therapeutics complements C3J's capabilities as a leader in the development of synthetic phage through its proprietary phage engineering platform. Synthetic phage offers enhanced antimicrobial properties that improve pharmacology, limit the emergence of phage-resistant bacteria and create potential opportunities for IP protection for best-in-class therapeutics. I believe this merger will create a leading company in the development of targeted bacteriophage therapeutics at a time when key regulatory bodies, including the U.S. Food and Drug Administration (FDA) and the World Health Organization (WHO) recognize the imminent threat posed by increased antimicrobial resistance."
>
> Paul Grint, Chief Executive Officer of AmpliPhi, remarked, "We are committed to advancing this new class of therapeutics, and this merger with C3J will combine complementary assets and capabilities that we believe are in the best long-term interests of each company's shareholders while addressing the significant unmet needs of patients struggling with multi-drug resistant bacterial infections."

**About the Proposed Transaction**

Under the terms of the merger agreement, on a pro-forma basis and after closing of the merger but prior to the closing of the financing, the current C3J securityholders will own approximately 70% of the combined company, while current AmpliPhi securityholders will own approximately 30% of the combined company (on a fully diluted basis but using the treasury stock method and in each case excluding out of the money options and warrants). The pre-financing ownership split was determined by the exchange ratio in the merger agreement, which was based on a $28 million valuation for C3J and a $12 million valuation for AmpliPhi, a premium to the 30-day volume weighted average share price of AmpliPhi. On a proforma basis, after giving effect to the contemplated $10 million financing, current C3J securityholders will own approximately 76% of the combined company and current AmpliPhi securityholders will own approximately 24% of the combined company (on a fully diluted basis but using the treasury stock method and in each case excluding out of the money options and warrants).

The transaction has been unanimously approved by the boards of directors of both companies, and is expected to close in the first quarter of 2019, subject to approval by AmpliPhi shareholders. The transaction is also subject to customary conditions, including the execution of stock purchase agreements by certain existing C3J shareholders who have agreed to invest an additional $10 million into the combined company, subject to customary closing conditions. The investment is expected to close immediately following with the closing of the merger.

Mr. Patrick of C3J will be the Chief Executive Officer of the combined company and Dr. Brian Varnum of C3J will be appointed President and Chief Development Officer. Steve Martin, AmpliPhi's Chief Financial Officer, will continue to act as the CFO of the combined company. Dr. Grint has agreed to act as a clinical consultant for the combined company. Prior to closing, AmpliPhi will seek stockholder approval to conduct a reverse split of its outstanding shares to satisfy listing requirements of the NYSE American. The combined company is expected to trade on the NYSE American under a new ticker symbol.

Ladenburg Thalmann& Co. Inc. is acting as financial advisor to AmpliPhi and Cooley LLP is acting as legal counsel to AmpliPhi. LifeSci Capital LLC is acting as financial advisor to C3J and Thompson Hine LLP is acting as legal counsel to C3J.

24.    The Proposed Transaction is subject to approval by the shareholders of AmpliPhi Biosciences, as well as regulatory approvals.

## FALSE AND MISLEADING STATEMENTS

## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

25.    On April 4, 2019, the Company filed the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.  The Proxy Statement contains the financial opinion and analyses of the

Company's financial advisor Ladenburg Thalmann & Co., Inc. ("Ladenburg Thalmann") in connection with the Proposed Transaction.

26.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

27.    The Proxy Statement mistakenly states that the merger agreement was executed on January 3, 2018, when in fact it was executed on January 3, 2019.

<u>**Materially False and Misleading Statements or Material**</u>

<u>**Misrepresentations or Omissions Regarding Ladenburg Thalmann's Opinion**</u>

28.    The Proxy Statement contains the financial analyses and opinion of Ladenburg Thalmann concerning the Proposed Transaction, but fails to provide material information concerning such.

29.    With respect to Ladenburg Thalmann's *Initial Public Offering Analysis*, the Proxy Statement fails to disclose whether there are any differences among the infectious diseases that may cause disparities in value of the companies referenced in the analysis. The Proxy Statement also lacks information regarding the likelihood of success and/or approval of the drug(s) by the companies in the Initial Public Offering analysis.

30.    With respect to Ladenburg Thalmann's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose what the results would have been for the 25th and 75th percentile calculations had Spero Therapeutics Inc., Altimmune, Inc., and Entasis Therapeutics Holdings Inc. been included in the calculations. Further, the Proxy Statement fails to disclose the likelihood of success of the clinical trial and/or approval by the FDA of the Selected Publicly Traded Companies.

31.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32.    Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material and Misleading Statements or Material Misrepresentations or Omissions Regarding the Background of the Proposed Transaction

33.    The Proxy Statement omits material information relating to the sales process leading up to the Proposed Transaction.

34.    The Proxy Statement fails to disclose whether any of the fifteen (15) parties entered into a "don't ask, don't waive" ("DADW") provisions with the Company. Although, the Proxy Statement notes that AmpliPhi entered into a confidentiality agreement with 15 parties, it fails to disclose whether the executed agreement contained DADW provisions that are presently precluding any of them from making a topping bid for the Company. This information is material to shareholders in deciding how to vote on the Proposed Transaction, as it would show whether or not a superior offer for the Company was available.

35.    In addition, the Proxy Statement fails to disclose important background information about the Proposed Transaction, including how AmpliPhi and C3J first came to execute a confidentiality agreement on March 10, 2017.

36.    The Proxy Statement mentions that throughout May 2017, representatives of AmpliPhi and C3J continued to discuss terms of a strategic transaction, but fails to disclose any of the terms.

37.     Lastly, the Proxy Statement falsely states on pages 72 and 73 of the Proxy Statement that the merger agreement was executed on January 3, 2018, when in fact it was signed on January 3, 2019.

38.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or  authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

## COUNT II

### (Against the Individual Defendants for

### Violations of Section 20(a) of the Exchange Act)

43.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.    The Individual Defendants acted as controlling persons of AmpliPhi Biosciences within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.    Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

47.    In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and

information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

50.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  April 15, 2019           **REICH RADCLIFFE & HOOVER LLP**

By: /s/ Adam T. Hoover
Adam T. Hoover
Email: adhoover@reichradcliffe.com

**LIFSHITZ & MILLER LLP**
Joshua M. Lifshitz
Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Erik Midgarden, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in APHB securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 04/08/2019



Signature

## Exhibit A

My transactions in AmpliPhi Biosciences Corp. (APHB) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| APHB | 02/13/2018 | | P | 1666 | $1.20<br><br>$1.19 |
| APHB | 02/15/2018 | | P | 19 | $1.19 |
| APHB | 02/16/2018 | | P | 450 | $1.2248 |
| APHB | 03/05/2018 | | P | 2550 | $1.35 |
| APHB | 03/20/2018 | | P | 1640 | $1.2791 |
| APHB | 03/23/2018 | | P | 611 | $1.1566 |
| APHB | 10/25/2018 | | P | 3100 | $0.319 |